**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Betty Simpson BOERNER et al.,
Defendants-Appellants.**

No. 74–2468.

United States Court of Appeals,
Fifth Circuit.

Feb. 27, 1975.

Valentine Gabaldon, West Palm Beach, Fla. (Court-appointed), for Betty Boerner.

Andrew I. Friedrich, West Palm Beach, Fla. (Court-appointed), for Paul Boerner.

Daniel S. Pearson, Miami, Fla. (Court-appointed), for James Beauford.

Robert W. Rust, U. S. Atty., Don R. Boswell, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BELL, AINSWORTH and RONEY, Circuit Judges.

AINSWORTH, Circuit Judge:

James William Beauford, Betty Simpson Boerner and her son, Paul Winston Boerner, appeal from convictions following a jury verdict of guilty of violations in connection with the immigration laws of the United States. The indictment charged appellants with wilfully and knowingly conspiring to bring into the United States by means of a vessel a number of aliens not lawfully entitled to enter the United States, in violation of 8 U.S.C. § 1324. Beauford was additionally charged with twenty-two substantive offenses, in violation of 8 U.S.C. § 1324(a)(1), relating to the actual transportation of the aliens on October 17,

1973 and December 3, 1973, nine of which counts were subsequently dismissed by the Government. The jury found all defendants guilty of conspiracy and further found Beauford guilty of the substantive offenses. Betty Boerner was sentenced to eighteen months' probation; Paul Boerner to two years' probation; and Beauford to five years on the conspiracy count and three years each on the thirteen substantive counts, his sentences to run concurrently.

Appellants filed separate appeals, alleging numerous errors, all of which we find without merit.

The Government called as its witnesses three United States Border Patrol Agents, two of appellants' coconspirators (Richard Schupp, Jr. and James Fowler)[1] and ten of the aliens[2] who had been transported from Nassau to the United States aboard a vessel owned and operated by Beauford. The following facts were established:

In the summer of 1973 at Miami, Florida, Beauford employed Schupp as an extra crewman to assist him in transporting Haitians from Nassau to the United States aboard his yacht ECHO, also known as MINK, QUEEN B and C GULL. Beauford took Schupp to the vessel where Schupp first met Betty Boerner. Approximately a month later Schupp introduced Fowler to Beauford who offered Fowler similar employment. Fowler's duties also consisted of painting and carpentry work aboard the vessel for the purpose of camouflaging its appearance. The vessel subsequently departed from Miami for Nassau.

On October 16, 1973, after sunset, Schupp, Fowler and the three defendants began loading Haitians aboard the vessel at Nassau. Paul Boerner assisted in transporting the Haitians to the yacht in a car rented by Betty Boerner. As the passengers boarded the vessel, Beauford and Betty Boerner collected approximately $350 to $400 from each for their passage. After the money was counted by Beauford and the two Boerners, the passengers were issued a ticket and led out of sight below deck. The money was placed in Betty Boerner's purse and she and Paul left the vessel. Between 10 and 11 p. m., after having been loaded with approximately sixty-seven aliens, the vessel with Beauford, Schupp and Fowler aboard, departed for the United States. It reached port the following night after dark[3] and docked in the intracoastal canal at Boca Raton, Florida, alongside a house abutting the canal, where Paul and Betty Boerner were waiting. After taking precautions to assure they were not observed, the three defendants, Schupp and Fowler helped disembark the passengers and directed them to the house, from which they were later placed in the back of a U-Haul truck, rented by Betty Boerner, for the purpose of driving the aliens to Miami, Florida. Schupp drove the truck, with Fowler and Betty Boerner occupying the cab seat, and with approximately sixty-seven aliens concealed in the rear. Schupp was stopped and arrested in Miami for a traffic violation and later supplied information to the United States Border Patrol Agents concerning the venture. The vessel was thereafter kept under surveillance. It was observed the following month on November 30 by a United States Border Patrol Agent stationed at Nassau, who saw Beauford and Betty Boerner transporting people to the vessel periodically throughout that night up until December 2 when the vessel again departed the area. The Border Patrol at Miami was informed of the departure of the vessel and advised to start preparations to intercept it. The following day the vessel was sighted at a marina at Jupiter, Florida. Agents boarded the vessel and arrested Beau-

---

1. Fowler, a co-indictee of appellants, pled guilty and was sentenced to two years' probation. Schupp was named in the indictment as an unindicted coconspirator.

2. Of the ten aliens who testified, nine were Haitians; one was a Jamaican.

3. It was Beauford's announced plan to escape detection of the United States Coast Guard by entering at night.

ford. Twenty-seven aliens were found aboard. Paul Boerner was arrested at the parking lot of the marina.

Appellants contend that 8 U.S.C. § 1324(a)(1) violates the due process clause of the United States Constitution because it fails to require that the offense of bringing in aliens within the United States be committed with *knowledge* that such alien was not lawfully entitled to enter or reside within the United States.

■ The literal text of subsection (1) of section 1324(a) does not specify as a requisite for the offense that a person act knowingly, whereas the remaining subsections of the statute, (2), (3) and (4), expressly make such a requirement.[4] We noted this anomaly in Bland v. United States, 5 Cir., 1962, 299 F.2d 105, 106 n. 1. In *Bland* defendants were charged and convicted under the same subsection of the statute which we are considering here. As in the instant case, both the indictment and the instructions of the trial court charged knowledge as an element of the offense. After retiring to deliberate, the jury in *Bland* requested the trial judge to repeat the reading of the statute. The judge complied with a literal reading of the subsection, but failed to repeat to the jury the requirement of guilty knowledge. In considering the constitutionality of the subsection, we said:

> In his original charge the District Judge had correctly taken the position that guilty knowledge was a material element of the offense, since the indictment charged it, *and for the further reason that the statute would be unconstitutional if construed so as to permit a finding of guilt without such knowledge.* But upon request for further charges he failed and refused to remind the jury of this requisite matter of proof, upon the stated ground that the statute was all that the jury had requested to hear.

299 F.2d at 108. (Emphasis supplied.) We reversed the convictions because of the prejudice to the rights of appellants resulting from the failure of the trial judge to do more than reread the statute involved. Unlike *Bland,* appellants in the present case suffered no prejudice. The District Court recognized that guilty knowledge was essential to the offense and so charged the jury.

■ We follow, as we must, the well-established rule that statutes must be construed, wherever fairly possible, to

4. The full text of 8 U.S.C. § 1324 follows:

    (a) Any person, including the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who—

    (1) brings into or lands in the United States, by any means of transportation or otherwise, or attempts, by himself or through another, to bring into or land in the United States, by any means of transportation or otherwise;

    (2) knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that his last entry into the United States occurred less than three years prior thereto, transports, or moves, or attempts to transport or move, within the United States by means of transportation or otherwise, in furtherance of such violation of law;

    (3) willfully or knowingly conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, in any place, including any building or any means of transportation; or

    (4) willfully or knowingly encourages or induces, or attempts to encourage or induce, either directly or indirectly, the entry into the United States of—

any alien, including an alien crewman, not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States under the terms of this chapter or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding $2,000 or by imprisonment for a term not exceeding five years, or both, for each alien in respect to whom any violation of this subsection occurs: *Provided, however,* That for the purposes of this section, employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring.

    (b) No officer or person shall have authority to make any arrest for a violation of any provision of this section except officers and employees of the Service designated by the Attorney General, either individually or as a member of a class, and all other officers whose duty it is to enforce criminal laws.

avoid constitutional infirmities. United States ex rel. Atty. Gen. v. Delaware & H. Co., 213 U.S. 366, 29 S.Ct. 527, 53 L.Ed. 836 (1909); United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954); United States v. Vuitch, 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971); Curtis v. Loether, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974).

■ As we said in Bland, supra, a reasonable construction of section 1324(a)(1) requires guilty knowledge in order to sustain the constitutional validity of the statute. Absurd results would follow if we were to construe the statute as requiring knowledge as a prerequisite for conviction in subsections 2, 3 and 4 of section 1324(a) and eliminating that requirement in subsection 1. It would be unreasonable to believe that Congress so intended.

■ The further contention made by Beauford that the indictment failed to charge guilty knowledge is not supported by the record. The conspiracy and the substantive charges in the indictment are explicitly predicated on Beauford acting "knowingly and wilfully." We decline to accept appellant's strained interpretation that the indictment fails sufficiently to allege an offense because the terms "wilfully" and "knowingly" are not repeated to modify each and every element of the offenses contained within the separate counts.

The additional errors alleged, either in common by appellants or individually, warrant little discussion.

■ Appellants' attack on the sufficiency and quality of the evidence presented to the Grand Jury is foreclosed by the decision of the Supreme Court in Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) and our recent decisions in United States v. Newcomb, 5 Cir., 1974, 488 F.2d 190, and United States v. Cruz, 5 Cir., 1973, 478 F.2d 408.

■ We find no merit to Paul Boerner's contention that the prejudice caused by the testimony of Richard Schupp [it was actually the testimony of Fowler] that Boerner had brought Haitians to the ship in Nassau at times prior to the dates alleged in the indictment, was not cured by the District Court's cautionary instruction and that his motion for a mistrial should have been granted. The evidence of appellant's guilt was overwhelming and the cautionary instruction given by the trial judge completely cured any possible prejudice which might have occurred.[5]

■ Equally without merit is the contention of Paul Boerner that the Government failed to prove that he knew that the Haitians brought into the United States were not lawfully entitled to enter. Evidence of the exorbitant price demanded for the aliens' passage, and the surreptitious manner in which they were loaded onto the vessel, crowded into its hold, unloaded at a place remote from United States Customs inspection, and concealed in the rear of the U-Haul truck, all activities in which Paul Boerner fully participated, provided ample support for an inference of guilty knowledge.

■ There was no impropriety in the trial court's charge that the most important way to determine the credibility of witnesses is through common sense. The Court's statement supplemented the usual and proper instruction on judging the credibility of witnesses, and taken as a whole the charge was clearly correct.

■ The Boerner appellants finally contend that the trial court erred in failing to give a complete instruction on circumstantial evidence and specifically to instruct that such evidence "must exclude every reasonable hypothesis except that of guilt" or that it "must exclude every hypothesis of innocence." This Court has on numerous occasions said

---

5. In context of this contention we note that on direct examination Fowler answered that appellant had brought Haitians to the ship in Nassau. He was then asked:

   Q. Do you recall how he got them there?

   A. This was on prior trips to this one. An objection was made and sustained and the trial judge immediately cautioned the jury to disregard the statement and further instructed them on the irrelevance of such testimony.

that "unless the trier of fact could reasonably find that the evidence excludes every reasonable hypothesis except that of guilt," a conviction based on circumstantial evidence must be reversed.[6] As a reviewing court this is the standard we apply to test the sufficiency of the evidence. This is not to say, however, that the jury must be instructed on the "reasonable hypothesis" standard. To the contrary, where, as here, the trial judge gives a proper charge on reasonable doubt and further charges that the Government must prove each element of each offense charged beyond a reasonable doubt regardless of whether the evidence is direct or circumstantial, the "reasonable hypothesis" instruction tends only to confuse the jury. *See* Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); United States v. Squella-Avendano, 5 Cir., 1973, 478 F.2d 433; United States v. Stokes, 5 Cir., 1973, 471 F.2d 1318; United States v. Middlebrooks, 5 Cir., 1970, 431 F.2d 299.

Affirmed.

---

**6.** *See* United States v. Edwards, 5 Cir., 1974, 488 F.2d 1154; United States v. Horton, 5 Cir., 1973, 488 F.2d 374; United States v. Squella-Avendano, 5 Cir., 1973, 478 F.2d 433; United States v. Sidan-Azzam, 5 Cir., 1972, 457 F.2d 1309; United States v. Garza, 5 Cir., 1970, 426 F.2d 949.