**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert NICHOLSON and William Nicholson, Defendants-Appellants.**

No. 74–3724.

United States Court of Appeals, Fifth Circuit.

Jan. 14, 1976.

As Amended Feb. 20, 1976.
Rehearing Denied March 9, 1976.

Stanley W. Greenfield, Pittsburg, Pa., for Robert.

Roger I. Dallam, Gretna, La. (Court-appointed), for Wm. Nicholson.

Gerald J. Gallinghouse, U. S. Atty., Ronald A. Tronseca, Mary Williams Cazalas, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before WISDOM, GEWIN and AINS-WORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellants Robert J. Nicholson and William Nicholson appeal from their conviction after trial by jury of conspiracy to transport property worth more than $5,000 in interstate commerce, knowing the property to have been stolen, in violation of 18 U.S.C. §§ 371 and 2314. We have carefully examined each of the errors asserted by appellants and find them to be without merit. Accordingly, we affirm the convictions.

The Government's evidence was to the effect that appellants conspired with James Lawhon, a coindictee who pled guilty and testified for the Government as its principal witness. Lawhon, who was a former Bell Telephone Company employee, committed numerous burglaries of Southern Bell (now South Central Bell) properties in the New Orleans area on more than 104 occasions, and stole new and reconditioned telephones which he sold and shipped to appellants' company, Nichco, Inc., in Lexington, Ohio. From September 1970 continuously through December 1972 (except for several months), Lawhon stole and shipped approximately 200 such telephones, a substantial number being new equipment, each week to appellants. Lawhon communicated by long distance about these transactions with both defendants about once a week, or more than 100 times. Lawhon used fictitious names and addresses on all of the invoices and packages shipped to Nichco, but pursuant to telephone arrangements Nichco checks were made payable to Lawhon and forwarded to his proper address in New Orleans. Lawhon was paid in excess of $40,000 by the Nicholsons over the 2½-year period involved. Nichco then sold the telephones, mostly to Olson Electronics, Akron, Ohio, for approximately double this amount. FBI agents observed some of Lawhon's burglaries and thefts of the telephones, also appellants each picking up a shipment of the telephones at the Columbus, Ohio Airport. Pursuant to a search warrant, a large number of Bell System telephones were recovered by the FBI at the Nichco premises in Lexington, Ohio.

Whenever a shipment of telephones arrived Nichco employees turned aside from other work and immediately took them out of the boxes which had "Bell System" and markings on the side and destroyed the boxes by crushing and burning them. Identification markings on the telephones, "Bell System Property—Not for Sale," were ground and buffed off by Nichco employees under direction of the Nicholsons.

Appellants each testified and denied the conspiracy or any knowledge that the telephones were stolen, though they admitted they made no inquiries of Southern Bell to determine if the telephones could be sold.

Appellants assert as error the admission of testimony by the Government, over their objection, as to prices paid by Southern Bell to Western Electric for such telephones. The purpose of this proof was to show knowledge of the Nicholsons that they were stolen since they paid Lawhon for the telephones only about ¼ of the Western Electric price. Incidentally, when FBI agents searched Lawhon's home they found a copy of the South Central Bell Telephone-Western Electric stock price list in Lawhon's desk, and it was received in evidence at the trial. Appellants contend, however, that the price was not a true price because of the corporate relationship between Southern Bell and Western Electric. In our view the evidence was admissible, and given the corporate relationship referred to, the weight to be accorded the evidence was for the jury to determine. The evidence was, therefore, properly admitted by the trial court.

Appellants also assert as error the denial of their motions for mistrial

based on questions by the Government of defense witnesses as to criminal or improper conduct by others in association with Robert Nicholson in other incidents of the sale of telephone equipment. As to this issue, the trial court sustained defense objections to the sale of telephones by Nichco to Bennett and Beams. Also sustained was the defense's objection to questions to Assistant United States Attorney Bailey as to whether a plea bargain had been made with Lawhon relative to his testimony in other cases. However, on questions by the trial judge the Assistant United States Attorney testified that there were other cases besides the present one. The Government contends, and we agree, that it had the duty to disclose the details of its plea bargaining agreement with Lawhon and that the testimony produced was in response thereto. We find no error or prejudice under the circumstances.

 The next error complained of by appellants is that the trial judge made remarks concerning the credibility of the witness, Thomas, in a loud voice that could have been overheard by the jury. There is no way to determine on appeal whether this issue is well taken since nothing was done by defense counsel to preserve this point for review. The district judge was not asked to inquire of the jury whether they overheard his remarks and he was not asked to give the jury a cautionary instruction. Nor do we consider the remark of the trial court that the witness, Rowlands, was "a bookkeeper without books," of sufficient consequence or prejudice to warrant reversal. The district court later gave a cautionary instruction covering generally the subject matter of these objections.

 Appellants also contend that the district court erred in denying the motion to quash the indictment. They contend that appellants' testimony alone constituted the evidentiary basis for the indictment, and that since the court suppressed appellants' testimony before the grand jury, there was no competent evidence upon which the grand jury could have relied to support its indictment.[1] There is no indication in the record that the indictment was based solely on the testimony of the Nicholsons. The Assistant United States Attorney in oral argument on appeal informed the court that there was other evidence presented to the grand jury which was not transcribed and offered to supplement the record in this regard if required by us. We do not believe supplementing the record is required. No attempt was made by appellants to preserve this point for appeal by proof that the only witnesses who testified at the grand jury proceeding were the Nicholsons. Even so, the contention is without merit since the Supreme Court has recently decided that the exclusionary rule may not be extended to grand jury proceedings. The Nicholsons' testimony was, therefore, properly before the grand jury even though suppressed for trial purposes. *See United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 620–621, 38 L.Ed.2d 561 (1974); *United States v. Boerner*, 5 Cir., 1975, 508 F.2d 1064, 1068. In *Costello v. United States*, 350 U.S. 359, 363–364, 76 S.Ct. 406, 409, 100 L.Ed. 397, the Supreme Court said to "establish a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence" . . . "would run counter to the whole history of the grand jury institution . . . ." That the trial judge followed the applicable law is shown by his denial of the motion to quash the indictment, despite his granting of the motion to suppress

---

1. Apparently the motions to suppress on behalf of defendants were granted because the Assistant United States Attorney telephoned defendants the night before each was required to appear before the grand jury at New Orleans and each was told that the inquiry did not relate to culpability on his part and in response to inquiry, he would not need an attorney. Thus the Nicholsons appeared before the grand jury without consulting or having the benefit of counsel.

the grand jury testimony of Robert and William Nicholson.

Appellant William Nicholson also contends that there was error in denial of his motion for judgment of acquittal. He also contends that the Government failed to prove that the defendant had knowledge that the telephones involved were stolen. There was ample evidence, however, to connect this appellant with the transaction. FBI Agent Huddleston testified to an oral statement taken from William Nicholson that Nichco had been purchasing telephones from Lawhon for several years. William Nicholson said that his brother, Robert Nicholson, did most of the paper work and that he primarily traveled and sold equipment. He said he picked up a number of cartons of telephones received from Lawhon at the Columbus Airport and that they were then ground and buffed and the words "Bell System—Not for Sale" taken off because customers did not like to have this notation on the telephones. He said that Lawhon told him by telephone that he had a legitimate source for obtaining the telephones; further, that he did not see how anyone could steal that quantity of telephones.

There was other evidence such as Lawhon's telephone admonitions to both Nicholsons to be careful; that he was concerned about the situation because he did not have any documents to back up the shipments of phones though they were coming through Western Electric. Lawhon testified that defendants told him they would send some documents obtained from New England Bell that would protect him but he never got them though he asked Robert Nicholson, and later William Nicholson, about it. Approximately 52 shipments of telephones were new or Class "C" (reconditioned) telephones consisting of more than 7,000 telephones. Most had the marking "Bell System Property—Not for

Sale" and were shipped in the original boxes to defendants. The Bell System logo was ground and buffed off by defendants, as they said, at their customers' request. However, Mr. Corrigan, the representative of Olson Electronics, which purchased most of the stolen telephones involved, testified that defendant William Nicholson told him he had authorization by letter from the Bell System to remove the identification. Corrigan said he asked William Nicholson at least ten times to see the letter, which was never forthcoming, and that Nicholson told him the phones were being received from Burnup & Sims in Florida but they were coming from Southern New England Bell. He did not reveal that the telephones were coming from Lawhon.

For purposes of appellate review, only slight evidence is necessary to connect a person with a conspiracy. *United States v. Edwards*, 5 Cir., 1974, 488 F.2d 1154, 1157; *United States v. Perez*, 5 Cir., 1974, 489 F.2d 51, 72; *United States v. Goodson*, 5 Cir., 1974, 502 F.2d 1303, 1305–1306; *United States v. Mayes*, 6 Cir., 1975, 512 F.2d 637, 651. *See also United States v. Hall*, 5 Cir., 1976, 525 F.2d 1254, in which we make it abundantly clear, however, that it is improper for a district court to charge the jury that only slight evidence is necessary to connect a person with a conspiracy and that such an instruction would be erroneous.

There was no objection by defense counsel to the district judge's instructions to the jury and no merit, therefore, to the assertion by appellant William Nicholson of error in the failure to give requested jury instruction No. 3 of appellant William Nicholson relative to circumstantial evidence.[2] The requested instruction was for the so-called reasonable hypothesis charge relative to circumstantial evidence. In *United States v. Cortez*, 5 Cir., 1975, 521 F.2d 1,

**2.** Requested jury instruction No. 3 reads as follows:

I charge you that if you believe from the evidence that the government is relying on circumstantial evidence and this evidence does not exclude every other reasonable hy-

pothesis but that the defendants had specific intent to commit the crime with which they have been charged, it is your duty to return a verdict of not guilty and acquit the defendants.

4, we most recently held that it is not necessary for the trial judge to instruct the jury on the reasonable hypothesis test, that is, that the evidence must exclude every reasonable hypothesis other than that of guilt, when the jury is instructed properly on reasonable doubt. *See also United States v. Kolsky*, 5 Cir., 1970, 423 F.2d 1111, 1113, where we pointed out that the Supreme Court in *Holland v. United States*, 348 U.S. 121, 139–140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954) said that "the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such

an additional instruction [i. e., the reasonable hypothesis test] on circumstantial evidence is confusing and incorrect . . . ." *See also United States v. Rodriguez*, 5 Cir., 1975, 523 F.2d 738; *United States v. Hansbrough*, 5 Cir., 1971, 450 F.2d 328, 328–329; *United States v. Boerner*, 5 Cir., 1975, 508 F.2d 1064, 1068–1069.

The trial judge adequately and properly instructed the jury in this regard and pertinent parts of his charges are reproduced in the margin.[3] We find no error

---

**3.** The trial judge charged the jury on circumstantial evidence in pertinent part as follows:

Evidence is of two kinds, direct and circumstantial.

Direct evidence is evidence which, if believed, establishes the truth of a fact in issue without the aid of any inference or presumption.

Circumstantial evidence, on the other hand, is evidence which, without going directly to prove the existence of the fact in issue, nevertheless gives rise to a logical inference that such fact does exist.

It is not incumbent upon the government to prove the guilt of an accused by the use of direct evidence alone. Such guilt may be established by circumstantial evidence, as well as by direct evidence, or by direct and circumstantial evidence.

To warrant a conviction on circumstantial evidence, each link of the chain of circumstances necessary to be established in order to prove the guilt of an accused must be itself proved by competent evidence beyond a reasonable doubt, and all the facts and circumstances necessary to show guilt must be consistent with each other and with the main facts at issue, the existence of which the evidence seeks to establish beyond a reasonable doubt, and all the circumstances taken together must be of such a nature as to lead to the legitimate conclusion, and produce a moral certainty, that the crime charged was committed and that the accused committed it, and such circumstantial evidence must not be inconsistent with any other rational conclusion.

No greater degree of certainty is required where the evidence is circumstantial than where it is direct. The law demands a conviction whenever there is sufficient legal evidence to show guilt beyond a reasonable doubt, and circumstantial evidence is legal evidence.

The court also charged the jury as follows on reasonable doubt:

I will now give you the charge on "reasonable doubt". You will remember that the government has the burden of proof in this case as to each defendant beyond a reasonable doubt.

In criminal cases, after a plea of not guilty, a presumption arises and continues throughout the trial to its end that the defendant is innocent of the things charged against him. The law does not require of a defendant that he prove himself innocent, nor is a defendant required to explain any matter which has not been proven, or about which you have a reasonable doubt; but it puts the burden on the government to prove his guilt by the evidence beyond a reasonable doubt. This principle of law is not mere idle theory, but it must be followed by you, so that if there are two reasonable theories equally supported by the evidence, one of which is consistent with the guilt of a defendant, and the other consistent with his innocence, you must adopt that theory consistent with innocence, and acquit him, because he could not be said to be guilty beyond a reasonable doubt.

The term "reasonable doubt", as used in this charge, does not mean just any possible doubt that you might have. It means such reasonable doubt as a careful, prudent and reasonable person ought to entertain in the circumstances proven. It means a doubt founded on reason, a doubt for which you can give a reason.

It does not mean a vain, fanciful or whimsical doubt, nor does it mean a possible doubt created by the reluctance on the part of a juror to perform an unpleasant task.

It means a doubt arising out of the evidence that is based upon substantial grounds, and one is said to be convinced in a case of this kind beyond a reasonable doubt when, after an impartial comparison and consideration

therein. *See United States v. Minichiello*, 5 Cir., 1975, 510 F.2d 576, 578; *United States v. Boerner, supra,* at 1068–1069.

■ The contention of appellant William Nicholson that the Government did not give him all exculpatory material required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) is likewise without merit. This related to the failure of the Government to furnish to defense counsel prior to trial statements of witnesses Charles Thomas and William Kimmich taken by the FBI. It appears that appellants both knew the witnesses and could have examined them before trial. The statements were given, however, to defense counsel prior to the witnesses testifying. Moreover, it is not clear that the information contained in the statements was exculpatory. The Government contends, therefore, and we agree, that the statements were not *Brady* material and not producible in advance of trial. *See, e. g., United States v. Harris,* 5 Cir., 1972, 458 F.2d 670, 675–677. The witnesses took the stand on call of defendants and were examined in detail by defense counsel.

Finding no merit in any of the asserted errors of appellants, the judgment of conviction as to both defendants is affirmed.

of all the evidence, you can conscientiously say that you feel an abiding conviction to a moral certainty of the truth of the charge. A reasonable doubt exists whenever, after careful and impartial consideration of all the evidence in the case, the jurors do not feel convinced to a moral certainty that a defendant is guilty of the charge.

If there is any reasonable doubt in your mind about the guilt of a defendant on a charge in the indictment, he is entitled to the benefit of such reasonable doubt and to acquittal on the charge.

If, on the other hand, you think his guilt is clear beyond a reasonable doubt, then it is your duty to find him guilty on the charge. A reasonable doubt may arise not only from the evidence adduced, but also from a lack of evidence.

Since the burden is upon the prosecution to prove a defendant guilty beyond a reasonable doubt by proving beyond a reasonable doubt every essential element of the crime charged, a defendant has the right to rely upon failure of the prosecution to establish such proof.