P. A. B., INC., etc., et al., Plaintiffs,

v.

Edward STACK, etc., et al., Defendants.

ACE ADULT BOOKSTORE, INC. etc., et al., Plaintiffs,

v.

Edward STACK, etc., et al., Defendants.

Nos. 77–6322–Civ–SMA and 77–6360–Civ–SMA.

United States District Court, S. D. Florida.

Oct. 17, 1977.

criminal law the end justifies the means . . . would bring terrible retribution. Against that pernicious doctrine this Court should resolutely set its face."[1]

That's what these two cases are all about—to assert the American principle that no official, or entity or agency of a unit of government should "become a law unto himself" or itself.

These actions, consolidated for hearings by the Court upon Motions for Preliminary Injunctions, arise from the efforts of the Broward County Sheriff's Department and the City of Fort Lauderdale Police Department, their respective officers, agents, servants and employees to enforce the Florida obscenity law, Florida Statutes 847.011, prohibiting the sale or offer for sale of certain allegedly obscene materials including books and films.

Hirschhorn & Freeman, P. A., Norman F. Haft, Miami, Fla., for plaintiffs.

David T. Price, Sydney H. McKenzie, III, City Atty., Fort Lauderdale, Fla., for defendants.

## MEMORANDUM OPINION AND ORDER ON MOTIONS FOR PRELIMINARY INJUNCTION

ARONOVITZ, District Judge.

Mr. Justice Brandeis observed in his dissenting opinion in *Olmstead v. United States*, 277 U.S. 438, 485, 48 S.Ct. 564, 575, 72 L.Ed. 944 (1928):

"In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example . . . If the Government becomes a lawbreaker, it breeds contempt for the law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the

## JURISDICTION

Injunctive relief and money damages are sought for alleged violations of the First, Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments to the Constitution of the United States, the Civil Rights Statutes, 42 U.S.C., Secs. 1983, 1985, 1986. Both cases seek relief from alleged extraordinary harassment and abusive treatment of Plaintiffs' employees, customers and businesses, caused by what is asserted to be a pattern of law enforcement specifically designed and calculated by the defendants to cause economic chaos and result in financial disaster to the Plaintiffs through a continuous process involving the presence of uniformed and plain clothes police officers inside and outside Plaintiffs' businesses—premises at frequent and continuing intervals; the parking of police cars in the driveways, on the parkways and in front or in the immediate vicinity of Plaintiffs' establishments for hours at a time, with blinker lights flashing; the stopping and checking of identification of patrons exiting or seeking to enter Plaintiffs' business establishments; the frequent checking of identification of Plain-

---

**1.** Cited with approval in *Elkins v. U. S.*, 364 U.S. 206, 222–23, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

tiffs' employees within the premises and the extensive presence of Defendants' officers designed to harass and intimidate prospective patrons.

Plaintiffs, *P.A.B., Inc., et al.,* (Case No. 77–6322–Civ–SMA) also seek to enjoin state court proceedings presently pending against various employees of Plaintiffs arrested under search and arrest warrants for alleged violations of Florida Statute 847.011. Said Plaintiffs also attack F.S. 847.011 as unconstitutional, both facially and as applied, under *Miller v. California,* infra. Plaintiffs in *Ace Adult Book Store, Inc., et al.,* (Case No. 77–6360–Civ–SMA) seek a declaratory judgment as to the constitutionality of the cited statute but do not demand injunctive relief therefrom nor any injunctive relief relating to or against similar pending state criminal court proceedings involving their employees.

The Hon. Robert L. Shevin, Attorney General of the State of Florida, and the Hon. Reubin O'D. Askew, Governor of the State of Florida, by and through the office of the Florida Attorney General moved for leave to intervene pursuant to Rule 24(b) Federal Rules of Civil Procedure in order to assert defenses relating to the constitutionality of Florida Statute 847.011 and said motion was granted.

This Court has jurisdiction under 28 U.S.C. 1332(2), (3), (4) and 28 U.S.C. 1331.

This Memorandum Opinion shall constitute the Court's Findings of Facts and Conclusions of Law pursuant to Rule 52(a) Federal Rules of Civil Procedure.

The Court has heard the equivalent of three full days of testimony involving 21 witnesses, and this Opinion is based upon such testimony, the many exhibits, extensive memoranda of law submitted by all parties, and the entire record.

## FACTS

All of the Plaintiffs are either owners or operators of adult book stores offering for sale sexually explicit books and materials, and/or peep show projectors therein which display sexually explicit films. P.A.B., Inc.

d/b/a Tunnel South Book Store and its President are/is the only Party/Plaintiff in either law suit located within the jurisdiction of the Chief of Police of the City of Fort Lauderdale. Ten other Plaintiffs in both actions have their places of business and/or are employees or officers of businesses in the unincorporated areas of Broward County, Florida over which the Broward County Sheriff exercises jurisdiction, and of which the City of Fort Lauderdale is the county seat.

Plaintiffs complain that the Sheriff and the Chief of Police initiated a crusade of bad faith or harassment geared to their business establishments by flooding the immediate vicinity and areas of said business establishments, commencing on or about June 1, 1977 including and until September 30, 1977 with walking patrols of policemen, parking police cars with blinker lights flashing in front of book stores (said cars both manned and unmanned) checking identifications of employees of adult book stores as well as identification of patrons entering and exiting same, writing down auto license numbers of the employees and customers, suggesting to patrons not to enter adult book stores and conducting other efforts to harass, annoy and embarrass Plaintiffs herein.

Typical of the aforegoing complaints was the testimony of Richard Chapman, an employee of LME d/b/a Eros Book Store, whose testimony, fortified by notes (logged at the times of the incidents) used to refresh his recollection, specifying no less than *sixty* (60) incidents from about July 8, 1977 through September 29, 1977 in which Broward County Sheriff officers, uniformed and plain clothes, had come into his place of business, either queried him for identification or spoke to a customer or stopped a customer exiting the place of business, or sought identification from customers or checked license numbers of autos parked in front of the business establishment, or remained for from five to seven hours at a time parked in front of or in the immediate vicinity of the business establishment. He testified that business dropped substantially as a result of the aforegoing.

Fred Infeld, an employee of DMH Corp., d/b/a Broward Book Store, with the aid of notes taken to establish dates, names and times, related approximately *one hundred* (100) separate incidents occurring from the period August 26, 1977 through September 27, 1977, in which police officers of the Broward Sheriff's Department likewise engaged in and performed similar acts of conduct as were testified to by the witness, Richard Chapman. These visits into the store, or at the premises, or outside the premises, occurred from three to seven times per day and on occasions involving as many as three or more officers at a time, in addition to the extensive hours when the police cars would remain parked in front of the business. Infeld testified that the business at his establishment had decreased 85% to 90% during that time.

Arnold Heche, an officer and manager of Schmata, Inc., testified that during the period from August 25, 1977 through September 27, 1977 the officers of the Broward County Sheriff's Department had come in or parked cars or stopped customers or otherwise made their presence in the immediate vicinity of his store known not less than 37 times including the stopping and interrogating of customers, both inside and outside the store. His business gross had decreased $2500 and 00/100 during the month; that in the first month of this activity (June, 1977) he had experienced a 50% reduction in business for June, 1977 over June of 1976.

Harold Rothenberg, Manager of RIC Corp., d/b/a Powerline Book Store, testified to similar incidents by the Broward Sheriff Department with the same relative degree of frequency and visits as indicated by prior witnesses, causing his business to drop by 75%.

Each of the other Plaintiffs adduced similar testimony as to the presence of and the continual harassment by the Broward Sheriff's Department during the same relative period of time extending from June, 1977 until the end of September, 1977, intensifying at the end of August and through September and with similar results financially to each.

Illustrative of the situations factually described was the testimony offered by Robert Poppola connected with Tunnel Book Store in the City of Fort Lauderdale, to-wit: (August 24, 1977 TR., Page 73)

"Q. Are you telling this Court that uniformed police officers, City of Fort Lauderdale uniformed police officers have been in your store every day for the past three weeks?

A. Yes, sir.

Q. How many times a day?

A. It varies, They would come in like—like they'd come in, you know, some days three, four times and then some days eight times, nine times.

Q. And when they came into the store, what would they do?

A. They would walk through the store and they'd approach customers, and I couldn't overhear what they were saying to customers or my clerks couldn't, but after they talked to them there, the customers would leave."

TR., Page 67.

"Q. Now, did there come a time since June, or did there come a time when you noticed an increase in the amount of police activity in the presence of your store?

A. Yes, there was.

Q. Would you tell the Judge briefly approximately when this began and of what it consisted?

A. Well, approximately two months ago, maybe a little bit more, we started getting a lot of plainclothed officers sitting in a parking lot, coming in the store. It was usually two to eight. At one time we had about ten in the store.

Q. All at one time?

A. Yes, sir."

Additionally, Poppola testified that he had tried to take photos of the police presence outside his store, that is, the police cars and the officers, but that on four occasions the policemen had approached and confiscated his cameras. They had never been returned to him. Poppola (TR. 78). Finally, he had caused a coffin-like box to be built with a hole in one end and had

placed it in a truck which someone drove around to adult book stores and from which coffin-like box Poppola succeeded in taking photos of the police presence through a hole at the end of the box. These photos are introduced in evidence as Plaintiffs' Exhibits 3a, b, c, d, 14 and 36.

It is clear from the testimony that in the case of each Plaintiff there is no isolated incident involved. To the contrary, there is a pattern which evolved and continued and intensified over a period of four months.

Sheriff Stack, in a television interview, the audio tape of which was introduced in evidence as Plaintiffs' Exhibit 2 indicated therein that the thrust of the action against adult book stores was principally designed at causing financial difficulties—namely, seizures of the mini-movie as a result of which scores of these machines had been seized under search warrants issued by the state courts. Sheriff Stack testified at Page 258, line 25 as follows:

"A. I don't want to quibble, but the point you were making was about bond money. I consider that rather incidental to the main objective. The fact is that I think both you and I agreed that we could take the peep machines away from your clients *and we're going to hit them in the pocketbook. They would wither on the vine, and they'd go out of business*, which was, I think, my legitimate objective.

Q. You said, and I agreed if you did it, they would probably go out of business?

A. All right, but I don't recall the particular phrase "bond Money." I might have referred to lawyers' fees."

and again at Page 291, line 3:

"Q. And on June 21st and July 16th did you not seize a total of almost 150 peep show machines?

A. I thought the number was 126, but I may be incorrect.

Q. Well, again, directing your attention to Page 3, you indicated 126 machines were seized on June 21st on the first occasion and 24 on the second.

A. I recall 126 and, yes, I recall the 24. It's on two occasions, then, a total of 150; yes, I will agree with that."

It should also be observed that about 10 or 12 individual employees at the various Plaintiffs' premises had been arrested as a result of the issuance of search and arrest warrants by state court judges and founded upon probable cause affidavits. Charges have been lodged against these employees and are pending in state courts. Only one had been brought to trial but no testimony was adduced to establish that the arrests violated the requirements of Speedy Trial procedures. It also appears that notwithstanding the wholesale seizures of films and projection equipment through search warrant process, the Plaintiffs had not exhausted remedies in the state court afforded by statute and in the criminal procedures themselves to seek to regain possession of the equipment.

Sheriff Stack testified that as a result of citizen complaints relating to criminal activities generally in the areas, the Broward Sheriff's Department, at his direction, had undertaken to effectuate "zone saturation" police procedures in certain areas of Broward County and that the increased police activity around the adult book stores was attributable to these police techniques. While the testimony seems to indicate an improvement in crime statistics which could be expected in an area saturated by police protection and coverage, it does not appear from the evidence that the intensity of the presence of the police in and about the adult book stores is or can be explained by "saturation" for sake of general crime reduction. The testimony falls far short of what would be needed to establish that.

What has been established, though, without question, is a clear, continuous and pervasive pattern of harassment against each Plaintiff, evidenced by the facts and uncontradicted as to frequency and even as to intent or purpose, rising to constitutional levels and constituting extraordinary circumstances requiring the jurisdiction of this Court to be invoked. This finding is made without regard and in no way related to or

dependent upon the pendency of any state criminal proceedings and/or any alleged charge of invalidity and unconstitutionality of Fla.Stat. 847.011.

## CONSTITUTIONALITY OF FLORIDA STATUTE 847–011

In *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the United States Supreme Court held that in order to validly regulate obscenity, a state law must be limited to

works which depict or describe sexual conduct (which is) specifically defined by the applicable state law as written or authoritatively construed, (and) which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.

*Id* at 24, 93 S.Ct. at 2615, 37 L.Ed.2d at 430–31. (footnote omitted).

The Supreme Court of Florida has specifically considered the statute challenged herein subsequent to the decision in *Miller*, supra, and not only has that Court held the cited statute to be constitutional but it has also specifically construed this statute in conformity to the standards announced by the United States Supreme Court in *Miller*. *See Rhodes v. State*, 283 So.2d 351 (Fla. 1973); *Johnson v. State*, 351 So.2d 10 (Fla. decided June 9, 1977).

 *Rhodes* and *Johnson* resolve any doubt as to the "authoritative construction" of Sec. 847.011, F.S., reaffirming that the statute must be applied in strict adherence to the ruling set down in *Miller*, supra. Indeed, the Plaintiffs in Paragraph 55 of their Complaint (Case No. 77–6322) and Plaintiffs in Paragraph 25 of their Complaint (Case No. 77–6360) recognize Sec. 847.011, F.S., as applied by the courts of Florida, is specifically within the constitutional standards set forth in *Miller*, supra. Plaintiffs, however, maintain that although the statute as applied by the court is constitutional, the courts have no authority to construe the statute so as to uphold its constitutionality. Such a proposition is in direct contravention of the well-established principle of both federal and Florida law that a statute should be construed to uphold its constitutionality. *Jacksonville v. Bowden*, 67 Fla. 181, 64 So. 769 (1914); *State v. Calhoun County*, 127 Fla. 304, 170 So. 883 (1936); *Rich v. Ryals*, 212 So.2d 641 (Fla. 1968); *United States v. Walter*, 263 U.S. 15, 44 S.Ct. 10, 68 L.Ed. 137 (1923); *United States v. Boerner*, 508 F.2d 1064 (5th Cir. 1975), cert. denied, 421 U.S. 1013, 95 S.Ct. 2418, 44 L.Ed.2d 681 (1975). This principle was upheld by the Supreme Court in *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975), where the Court recognized when considering a contention that a statute or an ordinance is facially unconstitutional, it is necessary to proceed with caution, and facial validity should not be declared unless a statute or an ordinance is not readily subject to narrowing construction by state courts. *Id.* 422 U.S. at 216, 95 S.Ct. at 2276, 45 L.Ed.2d at 135. In this case, the Florida Supreme Court has specifically and authoritatively construed the challenged statute in accordance with the constitutional standards expressed by the United States Supreme Court and that construction should be sustained. Just last term, the Supreme Court upheld the validity of the Illinois obscenity statute, which like Florida's statute, had been enacted prior to the *Miller* decision, and had been subsequently construed by the Illinois supreme court to incorporate the *Miller* standards. *Ward v. Illinois*, 431 U.S. 767, 97 S.Ct. 2085, 52 L.Ed.2d 738 (1977). Thus, the Plaintiffs' assessment of the Florida Supreme Court's interpretation of Sec. 847.011, F.S., as legislative action and therefore a nullity is patently erroneous.

 Plaintiffs' contention that the obscenity statute is being applied in an unconstitutional manner is also without merit. The fact that Sec. 847.011(1)(a), F.S., does not expressly define what an "article or instrument of indecent use" is, though prohibiting the possession of such an item, does not render the statute unconstitutionally vague. As previously noted, a definition by

judicial construction comports with the requirements of due process since it provides an individual with sufficient notice of what conduct is proscribed by the statute in question. *See Ward v. Illinois, supra; Miller v. California, supra; Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1959). The only term which even arguably is imprecise in the phrase "article or instrument of indecent use" is the word "indecent", and the Supreme Court of Florida specifically defined that term as synonymous with "obscene." *State v. Reese,* 222 So.2d 732 (Fla.1969). As previously shown, what is "obscene" under Florida law has been defined strictly in accordance with the requirements of *Miller.* Thus, any doubt as to the meaning of the statute has been resolved by the state courts, and Plaintiffs' claims of vagueness or lack of notice simply cannot be sustained in light of the clear pronouncements of the Florida courts.

■ Finally, Plaintiffs contend that the statute is unconstitutional as applied herein because the Florida legislature did not intend that the statute be made applicable to mechanical devices such as motion picture projectors. This is a matter of state statutory construction which under the principles enunciated in the *Younger* progeny of cases, is recognized as a matter properly asserted in the state trial court proceedings.

■ Thereupon, this Court holds and declares Fla. Statute 847.011 to be facially constitutional and valid. Arrest procedures and searches may continue thereunder in accordance with due process of law, and said statute may be enforced as the law of the State of Florida.

## CLEAR AND CONTINUOUS PATTERN OF HARASSMENT

■ *Injunctive relief is available even where the statute being enforced is, itself, valid, as it is just as easy to discourage the exercise of First Amendment rights by abusing a valid statute as by using an invalid one. Krahm v. Graham,* 461 F.2d 703, 707 (9th Cir. 1972); *Jones v. Wade,* 479 F.2d 1176, 1182 (5th Cir. 1973).

■ Where the type of harassment is alleged and proven as in the case sub judice, injunctive relief against its continuation is appropriate if the Plaintiffs establish bad faith use of the state, county, or city executive administrative and/or law enforcement machinery for the purpose of inhibiting the exercise of First Amendment rights and a probability of irreparable injury. The latter is established by a showing of a significant chilling effect of First Amendment rights that cannot be avoided by state court adjudication.

■ Obscenity is not protected by the First Amendment, *Roth v. United States,* supra. However, the line between publications barred from constitutional protection because it is obscene and material which is constitutionally protected cannot be drawn with any precision.

The courts have consistently recognized that book stores, theaters and other establishments *presumptively* under the protection of the First Amendment are not to be subjected to "police raids" or "closed down" and "padlocked" as common nuisances such as premises used for gambling, prostitution, or other such unlawful activities. See *State v. Motion Picture Entitled "The Bet",* 219 Kan. 64, 76–77, 547 P.2d 760 (1976); *Marcus v. Property Search Warrant,* 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); *A Quantity of Books v. Kansas,* 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964).

Injunctive relief has been granted to enjoin police action which goes beyond that necessary to enforce criminal obscenity laws, on the basis that harassing tactics, designed to "chill" First Amendment rights, constitute infringements upon First Amendment rights. In *Bee See Books, Inc. v. Leary,* 291 F.Supp. 622 (So.Dist.N.Y.1968) the New York police commissioner stationed uniformed police officers on the store premises of adult book stores for the purpose of making arrests for the sale of hard core pornography, although they were cautioned not to interfere with patrons entering or leaving the premises. The officer on duty stood in the doorway of the store, and casually entered the store and stood or

sat there in full view of patrons. Business dropped by 50% following such police activity. The court granted injunctive relief on the basis that the challenged police activities do not meet constitutional standards imposed by the first amendment for enforcement of state obscenity laws. In the case at bar the presence of the police cars and the police officers, their inspection of patrons and their persistent activities far surpassed in scope those in *Bee See.*

Defendants argue that under the principles of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and *Huffman v. Pursue*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) and *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), this Court should decline to exercise jurisdiction over the controversy. Likewise, Defendants argue that under *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) and *Long v. D. C.*, 152 U.S.App.D.C. 187, 469 F.2d 927 (1972) the principles of equity, federalism and comity should apply to dissuade this Court from affording injunctive relief. None of the cited cases prohibit a federal court from exercising jurisdiction to afford injunctive relief where extraordinary circumstances such as a continuous, clear and pervasive pattern of harassment is established by the evidence and likely to continue; particularly, when such relief can be afforded without requiring the granting of injunctive relief restraining state criminal proceedings and/or undue interference with either judicial and/or administrative duties and functions of state officials.

■ In the area of sexually oriented literature and films, state prosecuting authorities may vigorously enforce obscenity laws when the purpose is to punish the promotion or sale of *obscene* material, or to deter such promotion or sale. However, such law enforcement will run afoul of the Constitution if its purpose is to force a sexually oriented enterprise to cease doing business or to refrain from dealing in presumably protected sexually oriented materials. In those circumstances such activity constitutes an invalid restraint on First Amendment rights.

The enforcement of the obscenity laws as have occurred in Broward County and as depicted in this case in a continuous pattern and with great intensity, when viewed within the context of the statements by the Sheriff that the efforts were directed at the economic survival of the businesses raise the inference that the police activities have a secondary motive. There is strong evidence here that the pattern of police activity was effectuated in a manner calculated to maximize the negative impact on Plaintiffs' businesses and will continue unless appropriate relief is granted.

## FACTORS TO BE CONSIDERED IN AWARDING OF PRELIMINARY INJUNCTION

■ The four factors to be considered prior to award of preliminary injunction include a determination as to whether a substantial likelihood exists that Plaintiffs will prevail on the merits; whether or not there is a substantial threat Plaintiffs will suffer irreparable injury if injunctive relief is not granted; whether the threatened injury to Plaintiffs outweigh the threatened harm the relief may do to Defendants; and will the granting of a preliminary injunction disserve the public interest. *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567 (5th Cir. 1974); *Buchanan v. U. S. Postal Service et. al.*, 508 F.2d 259 (5th Cir. 1975). Here the Plaintiffs have amply demonstrated and met the requirements of all four factors.

The extent of the testimony taken and the exhibits received as well as the arguments of law, both oral and written, indicate that much if not all of the testimony that would be available at final hearing has been heard by the Court and from the nature of the matters at hand relief would be forthcoming on the merits.

The clear, continuous and pervasive pattern of harassment shown by the testimony and exhibits clearly indicate the irreparable injury when coupled with the threatened shutdown of Plaintiffs' businesses through severe economic losses. It should also be

noted that it is shown by the significant chilling effect of First Amendment rights which the pattern of conduct in this case indicates.

The threatened injury to the Plaintiffs outweigh the threatened harm to the Defendants because the very limited nature of the injunctive relief which this Court will grant should not in any way affect the exercise of the duties and functions of any of the Defendants or their offices in the performance of their duties so long as those duties are performed in accordance with law and do not become an unreasonable restraint against Plaintiffs' businesses calculated to cause severe economic losses.

The public interest will not be disserved because Fla. Statute 847.011 remains in full force and effect and that law can be enforced in any manner that due process permits. So long as lawful means are used in seeking to control crime in the immediate and/or general area of Plaintiffs' businesses the efforts of the police are not restrained or restricted and to the contrary, the principles of law inherent in the roots of this government would be served.

## INJUNCTIVE RELIEF

■■■ Injunctive relief herein is to be limited to prospective police activity unreasonable in frequency and without probable cause in the enforcement of the Florida obscenity law and done or accomplished in any manner other than by due process of law and calculated to seriously injure Plaintiffs' businesses. Beyond this Defendants shall be free to enforce the state obscenity laws in a manner free from constraint of this Court. Nothing herein contained shall prevent or prohibit law enforcement officers from making obscenity arrests and seizures at Plaintiffs' premises in accordance with law. Accordingly, it is—

ORDERED that the Motion of Plaintiffs in both causes of action for Preliminary Injunctive Relief be and the same is hereby GRANTED in part and relating to all Defendants in both actions, as follows:

1. Future use of police and police patrols in and about the immediate vicinity of Plaintiffs' establishments shall be limited to reasonable requirements for law enforcement and maintaining law and order in the general areas in which same are located but in a manner not inconsistent herewith and specifically not calculated to harass Plaintiffs' businesses.

2. The posting of police cruisers and/or police personnel in or about the immediate area of the Plaintiffs' establishments with or without their lights flashing and with or without police officers in said vehicles shall be limited to reasonable requirements for law enforcement and maintaining law and order in the general areas in which same are located but in a manner not inconsistent herewith and specifically not calculated to harass Plaintiffs' businesses.

3. Identification checks of customers and/or employees of Plaintiffs and/or people in or about the immediate vicinity of Plaintiffs' establishments shall be limited to reasonable requirements for law enforcement and maintaining law and order in general areas in which same are located but in a manner not inconsistent herewith and specifically not calculated to harass Plaintiffs' businesses.

4. Entry or exit by any customer or patron of Plaintiffs' establishments shall not be prohibited or interfered with except for violation of law and customers shall not be told not to enter Plaintiffs' establishments or that they would likely be arrested or in any other way harassed in any manner inconsistent herewith and specifically not calculated to harass Plaintiffs' businesses.

It is further—

ORDERED AND ADJUDGED that Plaintiffs' Prayers for Preliminary Injunction otherwise sought or requested and for any other relief in the nature of Preliminary Injunction is hereby DENIED, specifically including any relief from or against pending state court criminal proceedings involving Plaintiffs' employees and property.

DONE AND ORDERED at Miami, Florida this 17 day of October, 1977.