109 N.J. Super. 108 (1970)
262 A.2d 422
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
NATHANIEL CULVER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 24, 1969.
Decided February 20, 1970.
*110 Before Judges KILKENNY, LABRECQUE and LEONARD.
Mr. Arthur B. Penn, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. David S. Baime, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Defendant appeals from a judgment of conviction for armed robbery, N.J.S.A. 2A:141-1 and N.J.S.A. 2A:151-5, following a jury verdict of guilty.
On October 20, 1967, at about 1 P.M., Paul Caruso, the operator of a grocery and luncheonette at 399 South Orange Avenue, Newark, heard screams coming from his living quarters in back of the store. Just before this his married daughter, Pauline Testa, employed by him in the store, had left it to use the bathroom in the rear apartment. Caruso rushed to the rear of the store and upon opening the door to the living quarters was confronted by defendant, who had a gun in his hand. As he approached the intruder a bullet *111 from the gun was discharged into the ceiling. Following this there was a struggle between the two men in the course of which Caruso was struck over the head with the gun barrel. His attacker later made his escape through the store and into the street. Caruso's subsequent search revealed that apprximately $700 in cash and other items of personal property were missing. The indictment was for robbery of $300. Defendant did not take the stand, but adduced testimony that he had been at home at the time of the alleged robbery.
There were two entrances to the living quarters, one from the store and the other from the rear yard. The one from the store was located where it could normally be observed by the owner. The one in the rear was protected by a double lock and a burglar alarm. Presumably, the intruder gained entrance through the store.
Defendant raises two points: (1) the trial judge erroneously denied his motion for acquittal, and (2) he committed plain error in the charge.
N.J.S.A. 2A:141-1, provides that any person who forcibly takes from the person of another money or personal goods and chattels of any value whatever by violence or putting him in fear, is guilty of a high misdemeanor. Thus, force or intimidation is a necessary element of the crime and must precede or be concomitant with the taking. 46 Am. Jur., Robbery, §§ 14, 19, at. 145, 148 (1943); 77 C.J.S. Robbery, §§ 10, 11, at 455-457 (1952). The property stolen need not have been in contact with the person from whom it was taken at the time it was stolen, and if taken by fear it must be the result of such demonstration or threat as to create reasonable apprehension on the part of the victim that, if the theft were resisted, force would be used. State v. McDonald, 89 N.J.L. 421 (Sup. Ct. 1916), affirmed 91 N.J.L. 233 (E. & A. 1918). While a secret or sudden taking of property from the owner without putting him in fear and without open violence is deemed larceny, if there be a struggle to keep it or any violence or *112 disruption, the taking is robbery. 2 Schlosser, Criminal Laws of New Jersey (rev. ed) § 2146, at 1064 (1953).
Defendant urges that proof of the force or intimidation necessary to support the charge of robbery was lacking. The gist of his argument is that the assaults neither preceded nor were concomitant with his taking of the property.
From our review of the record we are fully satisfied of the propriety of the denial of defendant's motion for acquittal.
When Mrs. Testa unexpectedly went to the rear apartment, the intruder came at her from the rear, striking her on the back of the head, knocking her to the floor and striking her again while she lay there. When, upon his appearing to walk away from her, she got up and attempted to walk towards the front of the store to get help, he blocked her way, facing her with the gun in his hand. She described what then transpired as follows: "He said, `Don't scream and I won't shoot. I don't want to hurt you any more.' And then I begged with him to let me go into the bathroom to leave me alone. He could take whatever he wanted and I wouldn't scream." She then went into the bathroom, leaving defendant in the bedroom. The money had previously been in a bureau drawer in the bedroom.
As Mrs. Testa entered the bathroom she heard her father shout her name. As noted, when he opened the door leading from the store to the living quarters he was confronted by defendant. He testified that after the gun had been discharged and they had struggled, defendant "told me to stand back," and "told me to put my hands up and not to come towards him any more." He then "ordered me to bend over. I told him I wouldn't and I told him, I said, `take what you want. No one will stop you. Don't hurt anybody' and with that I went to the bathroom door." Caruso could not say how long after that defendant left, since he was in the bathroom giving first aid to his daughter. When he checked the room before leaving it *113 he observed that the dresser drawers had been pulled out and the room had been ransacked.
The cited facts afforded an adequate basis for a finding beyond a reasonable doubt that defendant had possessed himself of Caruso's money after putting Caruso and his daughter in fear. It is clear that the consent to the taking which was voiced by each of them was induced by fear of further physical injury at the hands of defendant. There was no direct proof[1] that the money had been taken before the assault on Mrs. Testa  or even before the assault on Caruso  which would have precluded such a finding.
Alternatively, the proofs were adequate to sustain a finding that the violence and putting in fear were concomitant with the taking. The money and articles of personal property kept in the bureau drawer of Caruso's apartment were in his custody and control, as well as in the control of his daughter while she was in the apartment. State v. Cottone, 52 N.J. Super. 316 (App. Div. 1958), certif. den. 28 N.J. 527 (1959). Cf. State v. Ford, 92 N.J. Super. 356 (App. Div. 1966); State v. Butler, 27 N.J. 560 (1958). Ordinarily, the degree of asportation necessary to constitute a taking under the statute need only be slight. 2 Schlosser, op. cit., § 2144, at 1062, 1063. However, in the context of the facts before us, the taking was not terminated when defendant took the money from the dresser drawer and (presumably) placed it in his coat pocket.[2] Here Caruso's precautions for the security of his property placed defendant in a position where, if he was to enjoy the stolen items, he had to take them out from the area of Caruso's control. This meant that he had to pass back through the store where Caruso would presumably be on guard. Unfortunately *114 for defendant, first Mrs. Testa and then Caruso interfered with his exit. This necessitated the overcoming of their opposition by force and putting in fear, a course which led to their invitation to him to "take what you want. No one will stop you."
Illustrative of the type of taking here involved would be one in which a thief, after surreptitiously gaining entrance to a bank vault and possessing himself of money contained therein, made his escape by assaulting or overcoming the manager when the vault was opened on the following morning  or one in which a thief approached a bank teller's window, presumably to make a deposit, only to reach over and pick up a stack of bills while the teller's back was turned. In the latter case, if a special policeman employed by the bank for the purpose of guarding against such actions intervened to prevent the thief's escape from the bank, and the thief drew a gun and ordered him to stand aside while he made his escape, it could hardly be said that a robbery had not been perpetrated.
Reason and logic would seem to dictate that where an owner of premises takes similar, though less effective, precautions against thievery and his opposition is overcome as he interposes himself to prevent the thief from taking the money from the portion of his premises in which it had been kept, his use of force is concurrent or concomitant with the taking, thus constituting the thief's action as robbery. State v. Miller, 53 Kan. 324, 36 P. 751 (Sup. Ct. 1894); Rivers v. State, 46 Ga. App. 778, 169 S.E. 260 (Ct. App. 1933); Grant v. State, 125 Ga. 259, 54 S.E. 191 (Sup. Ct. 1906); People v. Glynn, 54 Hun. 332, 7 N.Y.S. 555 (Sup. Ct. 1889).
The series of events which allegedly took place here  the ransacking of the room, taking of the money, Mrs. Testa's discovery of the thief and her giving of the alarm, Caruso's attempt to stop him, defendant's assault upon both of them and his consequently successful exit from the apartment  constituted a single incident or occurrence, *115 the res gestae of the crime. People v. Chambliss, 69 Ill. App.2d 459, 217 N.E.2d 422, 426 (App. Ct. 1966); People v. Brown, 76 Ill. App.2d 362, 222 N.E.2d 227 (App. Ct. 1966). Such a situation is clearly distinguishable from one in which force is used to foil pursuit after the taking is complete. 46 Am. Jur., Robbery § 19, at 148 (1943). Compare, however, State v. Turco, 99 N.J.L. 96, 102 (E. & A. 1923); State v. Mule, 114 N.J.L. 384, 392 (E. & A. 1934).
Defendant also asserts as error an excerpt from the charge in which the trial judge instructed the jury:
Now in this particular case although the perpetrator of the alleged robbery may have another's property in his actual physical control the owner still may be said to be in constructive possession of it. * * * If a person steals property and in the process of doing so is confronted with the owner or his agent and at that point in time before being able to take the property and carry it away so that a stealing is actually complete the owner or the agent as I have already indicated still is in constructive possession of that property and if upon such a confrontation the perpetrator uses force or puts his victim in fear the offense would still be robbery.
There was no objection to the cited portion of the charge so that we are limited to consideration of whether it amounted to plain error which possessed the clear capacity to bring about an unjust result. State v. Williams, 39 N.J. 471 (1963), cert. den. 374 U.S. 855, 83 S.Ct. 1924, 10 L.Ed.2d 1075 (1963). We find no plain error. The charge, considered as a whole, sufficiently alerted the jury to the issues involved and the law applicable thereto. Immediately after the challenged excerpt the jury was instructed, "* * * so if you find that even though there had been a rummaging and burglarizing which had started to take place before Mr. Caruso came upon the scene and before Mrs. Testa came upon the scene, but that that burglarizing and thievery was not completed until after the threat was placed upon Mrs. Testa and or Mr. Caruso, there would be a robbery." Defendant suffered no prejudice or manifest injury by reason of the challenged portion of the charge. State v. Seaman, 10 *116 N.J. Super. 439 (App. Div. 1950), certif. den. 6 N.J. 456 (1951).
The judgment is accordingly affirmed.
NOTES
[1] Defendant's verbal statement to the police was excluded by the trial judge and was not before the jury. In it he admitted that he had found about $30 in coins before Mrs. Testa and Caruso came into the room, and had taken a transistor radio after Caruso left him and went into the bathroom.
[2] Caruso testified that when he accosted defendant he noticed that his jacket was bulging.