590 A.2d 665

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
FRANCISCO SEIN, DEFENDANT–RESPONDENT.

Argued September 25, 1990—Decided May 21, 1991.

*Annmarie Cozzi,* Deputy Attorney General, argued the cause for appellant (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

*Daniel V. Gauteri,* Assistant Public Defender, argued the cause for respondent (*Wilfredo Caraballo,* Public Defender, attorney; *William E. Norris,* Designated Counsel, of counsel and on the briefs).

The opinion of the Court was delivered by

CLIFFORD, J.

The narrow issue on this appeal, here by certification granted, 117 *N.J.* 159, 564 *A.*2d 877 (1989), is whether the sudden snatching of a purse from the grasp of its owner involves enough force to elevate the offense from theft from the person to robbery as defined by *N.J.S.A.* 2C:15–1a(1). Finding insufficient evidence that defendant had used force on his victim as contemplated by the statute, the Appellate Division reversed defendant's conviction for robbery and remanded for the entry of an amended judgment of conviction for theft and for resentencing for that offense. 232 *N.J.Super.* 300, 305, 556 *A.*2d 1298 (1989). Because we conclude that defendant's conduct did not involve the type of force envisioned when the Legislature amended the robbery statute, we affirm.

—A—

On August 27, 1986, Edythe Williams cashed her unemployment check at Proper Check Cashing, a concession located in the Woolworth store on Main Street in Paterson. Mrs. Williams placed the proceeds in a zipped compartment in the strapless, clutch-type purse that she carried under her arm. After purchasing a notebook in Woolworth's, she left the store and headed for her car, which she had parked a couple of blocks away.

Mrs. Williams arrived at her car intending to drop off the notebook and continue shopping in the area. She went to the

passenger side and put her key in the lock, all the while carrying the purse under her right arm. As Mrs. Williams stood in the street, defendant, Francisco Sein, walked up and stood close beside her on her left. Mrs. Williams turned to face the man, thinking he had approached to ask a question, but defendant said nothing. Instead, "he reached across [her] and just slid [her] pocketbook—which wasn't very hard to do—from under [her] arm and took off," running toward Main Street. There was no evidence that defendant used any force other than that required to slide the purse from beneath Mrs. Williams' arm.

The police apprehended defendant, who was subsequently indicted for robbery. The robbery statute, *N.J.S.A.* 2C:15–1, reads as follows:

a. **Robbery defined.** A person is guilty of robbery if, in the course of committing a theft, he:

(1) Inflicts bodily injury or uses force upon another; or

(2) Threatens another with or purposely puts him in fear of immediate bodily injury; or

(3) Commits or threatens immediately to commit any crime of the first or second degree.

An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.

b. **Grading.** Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon.

At trial, defendant moved at the conclusion of the State's case for a judgment of acquittal in respect of the robbery charge, contending that the case should proceed only on the lesser-included offense of theft from the person, defined by *N.J.S.A.* 2C:20–3a as the "unlawful[ ] tak[ing], or exercis[ing of] unlawful control over, movable property of another with purpose to deprive him thereof." The crux of defendant's argument was that there was no evidence in the record that the taking of Mrs. Williams' purse was accompanied by the use of force against her person, a requirement for conviction under

*N.J.S.A.* 2C:15–1a(1). The State, on the other hand, urged that a judgment of acquittal would be improper because the Legislature intended that the force used to remove the purse from the victim was sufficient to elevate the unlawful taking to a robbery. The trial court denied defendant's motion, and the jury subsequently found defendant guilty of second-degree robbery.

On appeal, defendant contended that the trial court had erred by submitting the second-degree-robbery charge to the jury because there was no evidence that defendant had used force on Mrs. Williams in the course of the purse-snatching. The Appellate Division agreed, stating:

> [T]he amended robbery statute, like the common law and *N.J.S.A.* 2A:141–1 (repealed), requires the application of force upon another greater than is necessary merely to remove the property from the victim's person or control.
> * * *
>
> Where, as here, the victim is completely surprised by a purse-snatcher and offers no resistance, and force is applied only to the purse in order to separate it from the owner, the crime is not a robbery. Such force is not directed "upon another" but instead upon the object itself.
>
> [232 *N.J.Super.* at 304–05, 556 *A.*2d 1298.]

The court reversed the robbery conviction and remanded for the entry of a judgment of conviction for theft and for resentencing for that offense. *Id.* at 305, 556 *A.*2d 1298.

Before us, the State argues that the Appellate Division's construction of the "uses force upon another" language in the robbery statute, *N.J.S.A.* 2C:15–1a(1), both misconstrues the plain meaning of the statute and contravenes the relevant legislative intent. According to the State, the Appellate Division's standard will "change the focus of a robbery committed through the use of force from the conduct of the perpetrator to the nature of the property that he stole * * * and the particular characteristics of the victim as well as the victim's actions." In addition, the State submits that the standard established by the Appellate Division to determine the amount of force necessary to effect a robbery is "inexact and unworkable," and that therefore jurors will be required to use concepts founded in the

science of physics to determine whether more force was used than that quantum necessary merely to remove the object.

—B—

Cases involving "snatching" have required courts to determine where to draw the line between robbery and the lesser offense of larceny from the person. A certain amount of "force" is necessary to take property from the person of another, but whether the amount necessary merely to accomplish that taking is sufficient to warrant the more serious penalties associated with robbery has vexed those courts that have considered the question.

Some jurisdictions have construed the term "force" as used in the state's robbery statute to mean mere physical force or energy (*see, e.g., Raymond v. State*, 467 A.2d 161 (Me.1983)), while others have rejected hypertechnical distinctions in favor of a view that acknowledges that snatching an object from the grasp of the owner increases the risk of danger to the victim and justifies enhanced punishment. *E.g., People v. Santiago*, 62 *A.D.*2d 572, 405 *N.Y.S.*2d 752 (1978), *aff'd*, 48 *N.Y.*2d 1023, 402 *N.E.*2d 121, 425 *N.Y.S.*2d 782 (1980); *Commonwealth v. Brown*, 506 *Pa.* 169, 484 *A.*2d 738 (1984). Those jurisdictions implicitly recognize that victims do not turn over their property willingly, even if they do not resist or struggle with a thief. Thus, the amount of physical energy necessary to take the property is deemed sufficient to support a robbery conviction.

The predominant view, however, is that there is insufficient force to constitute robbery when the thief snatches property from the owner's grasp so suddenly that the owner cannot offer any resistance to the taking. *See* W. LaFave & A. Scott, *Criminal Law* § 8.11(d), at 781 (2d ed.1986). This "majority rule" has been set forth in the following terms:

[A] simple snatching or sudden taking of property from the person of another does not of itself involve sufficient force to constitute robbery, though the act may be robbery where a struggle ensues, the victim is injured in the taking, or

the property is so attached to the victim's person or clothing as to create resistance to the taking.

[*People v. Patton,* 76 *Ill.*2d 45, 49, 27 *Ill.Dec.* 766, 767, 389 *N.E.*2d 1174, 1175 (1979).]

The Illinois Supreme Court confirmed that rule in *People v. Taylor,* 129 *Ill.*2d 80, 133 *Ill.Dec.* 466, 541 *N.E.*2d 677 (1989):

The force required to overcome the physical resistance created by the attachment of an item to the person or clothing of the owner is to be distinguished from "the mere physical effort" which must occur whenever any item, *not* attached to the person or clothing of the owner, is transferred from one person (the owner) to another person (the taker). It will be a theft, therefore, and not a robbery, when the evidence "show[s] no more force than the mere physical effort of taking the pocketbook from [the victim's] person and transferring it to [the defendant]."

[*Id.* at 84, 133 *Ill.Dec.* at 468, 541 *N.E.*2d at 679 (citation omitted).]

That majority rule has been adopted in several other jurisdictions. See, *e.g., Richburg v. State,* 439 *So.*2d 788 (Ala.Crim. App.1983); *Walker v. State,* 546 *So.*2d 1165 (Fla.Dist.Ct.App. 1989); *Commonwealth v. Davis,* 7 *Mass.App.* 9, 385 *N.E.*2d 278 (1979). *See generally* Annotation, "Purse Snatching as Robbery or Theft," 42 *A.L.R.*3d 1381, 1382–88 (1972 & Supp.1990) (collecting cases).

The legislative history of New Jersey's robbery statute, *N.J. S.A.* 2C:15–1, when read in the context of the Code Commentary on theft, reveals that our Legislature intended to adopt the majority rule.

—C—

At common law, robbery was defined in New Jersey as "the felonious taking of personal property from the person or custody of another by force or intimidation." *State v. Butler,* 27 *N.J.* 560, 589, 143 *A.*2d 530 (1958). The pre-Code robbery statute, *N.J.S.A.* 2A:141–1, codified the common law. *State v. Carlos,* 187 *N.J.Super.* 406, 413, 455 *A.*2d 89 (App.Div.1982), *certif. denied,* 93 *N.J.* 297, 460 *A.*2d 693 (1983); *State v. Cottone,* 52 *N.J.Super.* 316, 323, 145 *A.*2d 509 (App.Div.1958), *certif. denied,* 28 *N.J.* 527, 147 *A.*2d 305 (1959).

The Appellate Division summarized the general state of the law of robbery under the pre-Code statute in *State v. Culver,*

109 *N.J.Super.* 108, 262 *A*.2d 422, *certif. denied,* 56 *N.J.* 473, 267 *A*.2d 55 (1970), where it stated:

N.J.S.A. 2A:141-1, provides that any person who forcibly takes from the person of another money or personal goods and chattels of any value whatever by violence or putting him in fear, is guilty of a high misdemeanor. Thus, force or intimidation is a necessary element of the crime and must precede or be concomitant with the taking. The property stolen need not have been in contact with the person from whom it was taken at the time it was stolen, and if taken by fear it must be the result of such demonstration or threat as to create reasonable apprehension on the part of the victim that, if the theft were resisted, force would be used. *While a secret or sudden taking of property from the owner without putting him in fear and without open violence is deemed larceny, if there be a struggle to keep it or any violence or disruption, the taking is robbery.*

[*Id.* at 111–12, 262 *A*.2d 422 (citations omitted) (emphasis added).]

The foregoing summary suggests that at the time *N.J.S.A.* 2A:141–1 was in effect, New Jersey followed the majority view as stated in *People v. Patton, supra,* 76 *Ill.*2d at 49, 389 *N.E.*2d at 1175, set forth above at 213–14.

In 1979, the Legislature revamped the criminal laws by enacting the New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to 98–4. Under *N.J.S.A.* 2C:15–1a, as originally enacted, "[a] person [was] guilty of robbery if, in the course of committing a theft, he: (1) [i]nflicts bodily injury upon another; or (2) [t]hreatens another with or purposely puts him in fear of immediate bodily injury; or (3) [c]ommits or threatens immediately to commit any crime of the first or second degree."

In 1981, however, the Legislature amended *N.J.S.A.* 2C:15–1a(1) to read that a person is guilty of robbery if in the course of committing a theft he "[i]nflicts bodily injury *or uses force* upon another." *L.* 1981, *c.* 22, § 1 (emphasis added). The Legislature's intention regarding the addition of the "or uses force" language is made clear by the following Statement of the Senate Judiciary Committee:

Senate Bill No. 885 amends *N.J.S.A.* 2C:15–1 to clarify that a person is guilty of robbery if he uses any force upon another in the course of committing a theft. Under present law only a person who inflicts bodily injury upon another in the course of committing a theft is guilty of robbery. Senate Bill 885 extends the definition of robbery to cover the so-called "blind-side" mugging. This occurs when a person commits an act of theft—for example a purse snatching—by

approaching the victim from behind *and using some degree of force to wrest the object of his theft from the victim.* Often, however, no bodily injury is inflicted in these cases and therefore the offenses committed could be found to be theft rather than robbery.

[*Statement of the Senate Judiciary Committee to Senate Bill 885* (Apr. 21, 1980) (emphasis added).]

The State contends that that Statement shows that the Legislature contemplated that a sudden, surprise snatching of property held in the grasp of another or in some way in contact with the person of another involves the use of force sufficient to elevate the taking to a robbery.

To the contrary, that the Legislature intended to broaden the concept of force beyond the pre-Code understanding of that term is not at all clear. The Senate Judiciary Committee Statement begins by saying the amendment is to *"clarify* that a person is guilty of robbery if he uses force upon another in the course of committing a theft." (Emphasis added.) That suggests that the omission of the "or uses force" language in the Code as originally enacted in 1979 was an oversight. In amending *N.J.S.A.* 2C:15–1a(1), the Legislature merely intended to clarify that the type of force required to support a robbery conviction under the pre-Code statute still would be sufficient to elevate a theft to a robbery.

As we indicated earlier, see *supra* at 213, 214, "a simple snatching or sudden taking of property from the person of another does not of itself involve sufficient force to constitute robbery" under the pre-Code statute, and nothing in the Senate Judiciary Committee Statement undercuts that standard. Although the Committee Statement refers to a "purse snatching" as an example of the conduct the amendment was intended to cover, it goes on to state that snatchings rising to the level of robbery include only those that involve "some degree of force to *wrest* the object" from the victim. (Emphasis added.) To "wrest" is to "pull, force, or move by violent wringing or twisting movements." *Webster's Third New International Dictionary* 2640 (1971). The Legislature apparently determined that the violence associated with "wresting" is deserving

of more severe punishment. It did not, however, intend to eliminate the requirement that robbery by use of force include force exerted "upon another."

Moreover, the Commentary to the Code definition of "theft" strongly suggests that the Legislature did not intend that a surprise purse-snatching unaccompanied by injury, threat, struggle, or attempted resistance would constitute the crime of robbery. In discussing *N.J.S.A.* 2C:20–3, which provides in pertinent part that "a person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof," the Legislature made clear the following:

> The crime here defined may be committed in many ways, i.e., by a stranger acting by stealth or *snatching from the presence or even the grasp of the owner* or by a person entrusted with the property as agent, bailee, trustee, fiduciary or otherwise.
>
> [II *New Jersey Penal Code: Final Report of the New Jersey Criminal Law Revision Commission* § 2C:20–3 commentary 2 at 222 (Oct. 1971) (emphasis added).]

The theft statute thus includes purse-snatchings from the grasp of an owner, while the robbery statute includes purse-snatchings that involve some degree of force to wrest the object from the victim. The only way to reconcile the two statutes is to hold that robbery requires more force than that necessary merely to snatch the object.

If the Legislature had intended that the amount of force necessary to snatch the object would be sufficient to constitute a robbery, it could have amended the theft statute to indicate that it includes only those snatchings in which the object of the theft is loose or can be cut loose, but not those in which the object must be removed from the victim. It did not do so.

The standard we adopt today continues the focus of a robbery on the conduct of the perpetrator rather than on the nature of the property stolen or the characteristics of the victim and his or her actions. Furthermore, we do not agree with the State's contention that this standard is "inexact and unworkable." If in fact jurors will henceforth be required to resort to concepts founded in the science of physics to determine whether

more force was used than that quantum necessary merely to remove the object, that is hardly a dismaying by-product of a correct interpretation of the statute. Such concepts are used frequently by juries in their deliberations and are entirely within their ken.

—D—

■ The inclusion of the "uses force upon another" language in the robbery statute was a clarification that a taking accompanied by the use of force, as understood at common law and prior to the enactment of the Code, still would constitute a robbery. There is no indication that the Legislature intended to change the pre-Code rule that "a secret or sudden taking of property from the owner without putting him in fear and without open violence is deemed larceny, [but] if there be struggle to keep it or any violence or disruption, the taking is robbery." *State v. Culver, supra,* 109 *N.J.Super.* at 111–12, 262 *A.*2d 422. To the extent that the robbery statute and the Senate Judiciary Committee Statement are burdened with ambiguity, as so persuasively argued by the Chief Justice in his dissent, that ambiguity surely cannot inure to the benefit of the State. "[P]enal statutes that are open to more than one reasonable construction must be construed strictly against the State." *State v. Churchdale Leasing,* 115 *N.J.* 83, 102, 557 *A.*2d 277 (1989).

Because there is no evidence that defendant's conduct involved the type of force sufficient to elevate the theft to a robbery under *N.J.S.A.* 2C:15–1a(1), the judgment of the Appellate Division is affirmed.

WILENTZ, C.J., dissenting.

I would hold that, under the statutory amendment, all purse snatchings are robberies, regardless of the amount of force used. I believe this construction of the amendment achieves the overriding goal of the Legislature: to deter and to prevent

purse snatchings, not some kind, one kind, or a particular kind, but all purse snatchings.

I recognize the legitimacy of the majority's decision. The issue of statutory interpretation facing the Court is difficult. But I cannot accept what I believe is an interpretation that falls far short of the legislative intent even in the face of the persuasive analysis in its support. A basic societal interest is left unprotected despite the Legislature's clear intent to protect it. It is our interest in personal safety.

Determining the appropriate judicial role in construing statutes that do not accurately reflect the Legislature's intent is sometimes problematic. That problem is magnified as the distance between the legislative intent and the Legislature's language grows. Where, as here, a criminal statute is involved, the judiciary's attempt to bridge the gap can conflict with notions of fairness and due process: it is the criminal statute that determines a crime—we do not jail people for violating legislative intent. *See, e.g., State v. Churchdale Leasing, Inc.,* 115 *N.J.* 83, 557 *A.*2d 277 (1989) (penal statutes must be strictly construed).

This case presents an extreme example of the problem. The Legislature clearly intended to make *every* purse snatching a robbery and just as clearly did not say so. The question is how far the judiciary should go to effect the legislative purpose despite the lack of legislative language.

The majority apparently concurs that this case warrants our going beyond the literal meaning of the words of the statutory amendment. We disagree over the Legislature's intent when, in 1981, it converted theft into robbery under circumstances in which the thief "uses force upon another." *N.J.S.A.* 2C:15–1a(1), as amended by *L.* 1981, *c.* 22, § 1.

A literal application of the "uses force upon another" language to the offense of purse snatching suggests that force used solely upon a purse would be insufficient to elevate the crime from theft to robbery. Pursuant to such a construction,

one who snatched a purse without touching the victim, even if he exerted a great deal of force in order to pull a purse tightly clutched under his victim's arm, would not be guilty of robbery. A robbery would result only if he pulled the owner's hand itself, pushed her arm to loosen the clutch, or in some way used force upon the *person* as well as on the purse. That reading of the statute, closely conforming to the statutory language, would remove a substantial portion of purse snatching offenses from the robbery statute, contrary to the Legislature's intent. While I do not believe that the Appellate Division opinion, fairly read, adopts this construction, some of its language might be so read. *See State v. Sein,* 232 *N.J.Super.* 300, 305, 556 *A.*2d 1298 (App.Div.), *certif. granted,* 117 *N.J.* 159, 564 *A.*2d 877 (1989) ("Where, as here, the victim is completely surprised by a purse-snatcher and offers no resistance, and force is applied only to the purse in order to separate it from the owner, the crime is not a robbery. Such force is not directed 'upon another' but instead upon the object itself."). The majority and this dissent both recognize that the statute should not be interpreted so literally. We differ, however, in our reading of the legislative history concerning the nature and strength of the legislative purpose, and therefore differ concerning the appropriate statutory interpretation.

Not only did the Governor suggest that purse snatching was the object of the bill when he stated, at the bill's signing, that the amendment "insures that purse snatching may be prosecuted as a second degree crime under the robbery statute, rather than as a third degree crime under theft," but the Legislature also indicated such a purpose in the Senate Judiciary Committee's Statement. Neither the Governor nor the Senate Judiciary Committee, ultimately, restricted the amendment's purpose to some special category: it was purse snatching, presumably *all* purse snatching, that was to become robbery.

I disagree with the majority's interpretation of the Judiciary Committee's Statement. The majority reads it as confining the

bill to purse snatchings where the defendant "wrest[s] the object of his theft from the victim." It considers this sentence in the Statement, after it notes that the Statement indicates an intent to extend robbery to "blindside" mugging ("[t]his [blind-side mugging] occurs when a person commits an act of theft—for example a purse snatching—by approaching the victim from behind and using some degree of force to wrest the object of his theft from the victim") and concludes that it is the "wrest-ing" that is critical, suggesting a degree of resistance or violence associated with the purse snatching, that is, something other than the mere pulling of the purse from under the victim's arm. The majority could have concluded, just as easily, that the Committee's use of the phrase *"some degree* of force" meant *"any* degree," and that "wrest," while inconsistent with the notion of "any degree of force," was the more likely candidate for inadvertent usage than "some degree of force." In any event, the Senate Judiciary's Statement is best under-stood, and best interpreted, when the concluding paragraph is put in the mix:

> Thus the effect of Senate Bill No. 885 would be to insure that purse-snatching and other types of "blindside" muggings are classified as crimes of the second degree rather than as crimes of the third degree.

The Statement, then, taken as a whole, clearly suggests that the Legislature (to the extent the Judiciary Committee is its surrogate) intended to make *all* purse snatchings robberies, as did the Governor when he signed the bill.

Were the evidence thus limited, though fairly clear, the choice of statutory construction would still be difficult. Cer-tainly, given the text of the statutory amendment and the less than perfect clarity of the Committee Statement, one cannot fault the majority for concluding that the nature of the force determines the quality of the offense.[1] My own reading of the

---

[1]The majority correctly notes that penal statutes, reasonably subject to differing constructions, must be construed strictly against the State. *Ante* at 218. The use of this aid to construction depends on the statutory provisions

legislative intent arises from other sources as well, however, sources of which we can fairly take judicial notice. Those sources are the vast increase in muggings and purse snatchings that preceded the law and society's acute concern over these crimes.

For more than a decade we have witnessed a seemingly unprecedented upsurge in crime. Prominent among these offenses have been "street crimes," stranger-to-stranger offenses including ordinary muggings (usually thought to include some degree of violence or its threat) and "purse snatchings," meaning just what it says, not necessarily implying any violence or force whatsoever. That no one could any longer safely walk the streets produced fear and fury on the part of society. Purse snatching was particularly loathsome, given its unpredictability, lack of warning, almost total randomness, and the fact that women were almost invariably the victims. Force and

---

involved, their history, and their evident purpose. *In the Matter of De Marco,* 83 *N.J.* 25, 36–37, 414 *A.2d* 1339 (1980). There are other aids to statutory construction:

> To argue as defendant does that the Code must be strictly and literally interpreted conflicts with the mandate that the "provisions of the code shall be construed according to the fair import of their terms." *N.J.S.A.* 2C:1–2c. "[W]hen the language is susceptible of differing constructions it shall be interpreted to further ... the special purposes of the particular provision involved." *Ibid.; see State v. Maguire,* 84 *N.J.* 508, 514 n. 6 [423 *A.2d* 294] (1980) (where Code language susceptible of differing constructions, it is to be interpreted to further general purposes of the Code and special purposes of the particular provision). The Code enumerates seven general purposes governing sentencing; defendant relies upon one—fair warning of the nature of the sentence. He ignores others, such as insuring "the public safety by preventing the commission of offenses through the deterrent influence of sentences imposed and the confinement of offenders when required in the interest of public protection," *N.J.S.A.* 2C:1–2b(3), and preventing and condemning "the commission of offenses," *N.J.S.A.* 2C:1–2b(1). In light of the special objectives of the Graves Act, the general purposes of the sentencing procedures, the language of the Graves Act, and the pre-Code treatment of accomplices, we are of the opinion that our construction of the statute comports with the legislative intent. [*State v. White,* 98 *N.J.* 122, 131–32, 484 *A.2d* 691 (1984).]

violence were often present and certainly they were major elements of society's concern. But it was the offense itself, and its usual attributes, the insult and offense to the person, the potential danger, the helplessness, and the utter unredeemable ugliness of being "attacked"—for that is the universal perception—with or without force, by some amoral stranger who takes command of your belongings—it was the offense itself, purse snatching, regardless of its differing qualities, that was society's concern.[2] I find it most difficult to believe that either society or the Legislature ever intended to further penalize only "wresting" purse snatchings, but not the swift skillful removals that involve practically no force. Society and the Legislature condemn this offense regardless of whether the victim resists or whether because of "wresting," she becomes immediately aware of the violation. This is not to say that the Legislature could not have selected the extent of force as a critical factor in elevating the crime from theft to robbery. Certainly, the dangers are increased when a thief uses excessive force, whether because of an utter disregard for the victim or because of the necessities caused by her resistance; and to the extent force bears on the victim's "awareness," with its resulting fear, that is one of the most offensive aspects of the crime. The Legislature did not, however, intend to define the crime by the variables of fear and force. Rather, it intended to define *all* purse snatchings as robberies.

Application of the wresting approach illustrates the unlikelihood that the Legislature intended the distinctions it necessitates. It seems most unlikely that the Legislature sought to

---

[2] "The violent petty thief operating in the streets and alleys of big cities—the 'mugger'—is one of the main sources of insecurity and concern in the population at large. There is a special element of terror in this kind of depredation. The ordinary citizen does not feel particularly threatened by surreptitious larceny, embezzlement, or fraud. But there is understandable abhorrence of the robber who accosts on the streets and who menaces his victims with actual or threatened violence against which there is a general sense of helplessness." [II Model Penal Code, § 222.1, comment 1 at 98 (Revised Comments 1980) ].

transform a thief into a robber only if the thief encounters resistance while accomplishing his goal. Such a result amounts to equating the defendant's blameworthiness with the victim's reflexes. A thief who finds it necessary to tug the purse from under a woman's arm or from her instinctively tightened grasp is deemed a robber, while one who slides the purse out and removes it, as in this case, remains merely a thief. Similarly, one who takes a purse suspended by a shoulder strap or chain while the woman's arm is resting on the purse is a robber, while one who covertly lifts the purse without engaging her conscious or inertial resistance is but a thief.

Ironically, not covered in the "wresting" interpretation of the amendment are the very situations that the Legislature focused on—the "blindside" mugging purse snatching where the victim is approached from behind, and where the use of force is least likely.

The majority suggests that by adding the words "uses force upon another" to the robbery statute, the Legislature intended to return theft and robbery to their common law status. According to the majority, the Legislature inadvertently omitted the "uses force upon another" language when it passed the Code of Criminal Justice. Therefore, the amendment at issue in this case represents the Legislature's correction of that error. The majority supports this notion with citation to the Judicial Committee's characterization of the amendment as one "to clarify" that the use of force elevates a theft to a robbery. This argument is not persuasive. Certainly, "clarify" suggests that the Legislature may have thought the law already provided for what the Legislature now intends, but that hardly suggests anything about what it now intends. The long and short of the matter is that the legislative history contains neither a word nor an oblique reference to the common law. Furthermore, the Committee Statement also says that the amendment "extends the definition of robbery to cover the so-called 'blindside' mugging." The word "extends" makes clear that the Legislature was not merely breathing life into the

common law definition of robbery which, although it met society's needs centuries ago, does little to cope with our contemporary, unprecedented phenomenon of urban crime. Rather, the Legislature intended to do more, it explicitly focused on purse snatchings, all purse snatchings, not the common law definition of robbery which included only some purse snatchings.

I concede the obvious: the statutory amendment does not mention purse snatching. It does not by its terms explicitly make all purse snatchings robberies. But neither does it mention degrees of force, making purse snatching robbery only when a certain amount of force is used. Indeed, if literal conformity to statutory language is the criterion for correctness of construction, then construing this statute to make all purse snatchings robbery is the most accurate interpretation, for without question some force, a degree of force, is involved in *every* purse snatching, even those that involve only the removal of some weight from the body. However, I do not construe the statute this way because such construction is more faithful to the literal language, but rather because it reflects the Legislature's clear intent. Deterrence of purse snatching is what the Legislature wanted to accomplish, and it would be most surprised to learn that all it had deterred was purse snatching involving wresting, and had left out the many purse snatchers who go out ready and willing to wrest, but who, because of some fortuitous circumstance, grab the purse without such consequence. The announcement it wanted to make to society is that *all* purse snatchings are robberies so that the offenders should know it when they go out in the night—and more and more frequently, even in the day—to prey on their helpless victims.

The Legislature knew what too many of us know—that it is not only the one on a motor bike who takes the tourist's purse as he strolls on the street, not only the person on the down escalator who grabs the shoulder bag from the victim on the up escalator and dashes off into the crowd, but more so it knew what is not shown on the television ads—the street criminal

who pulls your purse out from under your arm, from behind, or face-to-face, without noticeable force and without threat other than the perceived possibility that resistance may lead to injury or even death. In each case the victim does not resist, and the only force may be the lifting of the object, but surely this is the force that the Legislature had in mind.

This construction of the statute is, of course, not limited to purses or to women. A person commits a robbery whenever he or she unlawfully takes an article held by or within the possession of a person, or attached to the outside of a person's garments. This definition encompasses any kind of article, not just a purse, and it would presumably extend to pickpocketing, although the legislative history, overwhelmingly indicating an intent to reach purse snatchers, provides no indication of an intent to reach the pickpocket. If, as is entirely possible, the Legislature did not intend so broad a scope for its new definition of robbery when applied to pickpocketing, legislative amendment may be needed. Distinctions exist between the two: purse snatching is usually accompanied by some degree of force and victim awareness, while pickpocketing is usually characterized by stealth, lack of force, and no victim awareness.

I believe this construction conforms most closely to the legislative intent and avoids the problems of other approaches generated by their divergence from that intent. For example, the majority would necessarily distinguish purses attached to the arm or to the clothing from unattached articles, because of the difference in force usually needed to gain control. Such a distinction hardly seems in accord with the Legislature's intent to deter purse snatching. The majority denies that its construction makes the occurrence of the offense depend "on the nature of the property stolen or the characteristics of the victim and his or her actions." *Ante* at 217. It argues that because its construction, ultimately, requires a showing that the *defendant* used force, it has thereby "continue[d] the focus of a robbery on the conduct of the perpetrator." While the majority is precisely accurate, it cannot avoid the fact that in terms of

outcome, its construction would differentiate between robbery and theft based substantially on the characteristics and actions of the victim (does she resist or not) or on the nature of the property stolen (is it attached or unattached). While distinctions in culpability could undoubtedly be drawn, I believe that, as a practical matter, the Legislature did not intend to elevate the level of criminality based on the degree of force used on account of wholly unpredictable and irrelevant circumstances such as a victim tightening her grip or strengthening her clutch.

Another possible construction of the amendment would avoid the question of the degree of force by focusing on the victim's awareness of the offense. *See Jones v. Commonwealth,* 112 *Ky.* 689, 66 *S.W.* 633 (1902); *Raymond v. State,* 467 *A.*2d 161 (Me.1983); *Commonwealth v. Jones,* 362 *Mass.* 83, 283 *N.E.*2d 840 (1972); *Commonwealth v. Brown,* 506 *Pa.* 169, 484 *A.*2d 738 (1984). While awareness encompasses the insult that is part of the offensiveness of the crime, I do not believe it should be the defining factor. It emphasizes, implicitly, "fear" as the legislative objective. The thrust of the "awareness" approach focuses on violent, life-threatening thieves. While many purse snatchers fit this description, the Legislature did not seek to so limit the amendment's coverage. The Legislature increased the penalty for purse snatching because it is a crime that generates fear throughout society, not only because it produces actual fear in some of its victims. In other words, the Legislature adjudged the conduct itself as warranting an increased penal sanction, regardless of the result of that conduct on an individual victim. While it is correct to note that it is the impact upon the victim that was critically important to legislators, and not the impact on the purse, that observation does not go far enough. The legislative concern expressed by the amendment touched not only the isolated victim, but *all* past and future victims of purse snatching, regardless of the method by which the offense was accomplished, because every purse snatching is attended by a probability of victim awareness and the corre-

sponding risk of escalation. That some purse snatchers are not violent muggers and that some victims, although aware of the offense, feel no special element of terror, does not change the fact that the Legislature acted to increase the punishment for *all* purse snatchings.

This "awareness" approach is attractive, and it undoubtedly captures the essence of the offense. But it contrasts starkly with the example given in the Judiciary Committee's Statement, that of the "blindside" mugging purse snatching, the form of the offense least likely to cause victim awareness, at least not until the thief is gone.

The majority concludes that snatchings, like the one involved in this case, are covered by the theft statute, *N.J.S.A.* 2C:20–3. It suggests that if such conduct is no longer theft, but robbery, the Legislature would have amended the theft statute by limiting it to instances where *no force* (at least as the majority views "force") of any kind is involved. *Ante* at 217 ("If the Legislature had intended that the amount of force necessary to snatch the object would be sufficient to constitute a robbery, it could have amended the theft statute to indicate that it includes only those snatchings in which the object of the theft is loose or can be cut loose, but not those in which the object must be removed from the victim."). To support its position, the majority cites language in the commentary of the theft statute indicating that purse snatching is a theft: "[Theft] may be committed in many ways, *i.e.*, by a stranger acting by stealth or *snatching from the presence or even the grasp of the owner....*" *Ante* at 216 (emphasis as it appears in the majority opinion). The flaw in the majority's position is easily seen by reading the language "snatching from ... the *grasp* of the owner" in isolation. Since the majority believes that the statutory amendment transforms a theft into a robbery upon the use of such force, by its logic the Legislature would have had to amend the theft statute contemporaneously with the amendment to the robbery statute in order to justify its very interpretation in this case. If the majority's argument here is ad-

dressed to legislative intent, it is not nearly as persuasive as the intent demonstrated by the legislative history recited above. If it is addressed to some notion disfavoring repeal or amendment of criminal statutes by implication, again the clarity of that legislative intent is sufficient to overcome any such obstacle. *See State v. Des Marets,* 92 *N.J.* 62, 76, 455 *A.*2d 1074 (1983) ("[T]he presumption against implied repeals is overcome by a showing of irreconcilable inconsistency.... In such situations, the general rule is that the later expression of legislative intent is intended to supercede prior law.").

I believe the majority's argument is fundamentally incorrect. If, as the majority implies, the theft statute covered only those takings where the force involved was limited to the kind of snatching involved in this case, and excluded takings where the victim resisted, a gaping hole in the law existed between 1979 and 1981 (when the statute was amended). Under such an interpretation, a taking accompanied by some resistance but accomplished without bodily injury would have fallen between the cracks of the theft and robbery statutes, having constituted too much force to be a theft and too little to be a robbery, and would have constituted no crime. Clearly, such a result would have been absurd. The fact is that neither the theft statute nor its commentary addresses or is intended to address how much violence is consistent with theft or indeed to draw a dividing line between theft and robbery, for there is no such line. All robberies are thefts; robbery is simply a greater offense that always includes theft. *N.J.S.A.* 2C:15–1. Beyond doubt, prior to the 1981 amendment, every unlawful taking, no matter how much force was needed or used against the victim, constituted a theft and only escalated to a robbery if bodily injury resulted. But if the point at which a theft becomes a robbery is viewed as a line, the Legislature does not have to amend the theft statute to move that line. It changes every time the robbery statute changes. (The issue would be different if the statute defining theft expressly limited the offense itself to takings unaccompanied by force.)

I do not perceive any serious due process objection to the construction I urge. It is sufficiently definite to satisfy due process. Furthermore, insofar as criminal statutes must, for due process purposes and as a matter of fundamental fairness, provide adequate notice of that which is a crime, again, I believe the standard is met. The statute refers to "us[ing] force upon another" in connection with the taking of personal property. That the force may be indirectly used or may be of any degree creates no problems of notice. I would doubt that a defendant could complain that force included "any force." The statute gives every potential purse snatcher fair notice of a reasonable likelihood that, no matter what he does to snatch a purse, he may be guilty of a robbery. *See State v. Smith,* 85 *N.J.* 193, 208–10, 426 *A.*2d 38 (1981) (If a court's interpretation of a statute is not "unexpected," then due process is not violated.). I do not believe due process requires more. If it does, then it is given by this decision for all future purse snatchings. *See Bouie v. City of Columbia,* 378 *U.S.* 347, 362, 84 *S.Ct.* 1697, 1707, 12 *L.Ed.*2d 894, 905 (1964) (In holding that a judicial enlargement of a criminal statute may be unenforceable as violative of due process when applied retroactively, the Court noted that judicial construction of a statute "is of course valid for the future."); *P.A.B., Inc. v. Stack,* 440 *F.Supp.* 937, 944 (S.D.Fla.1977) ("A definition by judicial construction comports with the requirements of due process since it provides an individual with sufficient notice of what conduct is proscribed by the statute in question.").

The majority's reliance on a so-called "majority rule" is misplaced. The concept of a "majority rule," while persuasive in matters of common law, is sometimes inappropriately applied to criminal law, a field dominated by statute. There exists no nationwide, uniform robbery statute. Many states have enacted statutes which differ slightly in their language. To the extent that other state's have statutory language identical to our own, the legislative history of our statute, which differs

from that of other states, and its explicit reference to purse snatching, must control our decision.

In this case, the trial court instructed the jury that, in order to find the defendant guilty of robbery, it must find that he "used force upon [the victim]." The court defined "force" as "any degree of physical power or strength used against the victim." I would hold that a defendant who snatches a purse held by or within the possession of a victim, or attached to the outside of the victim's clothing, has used sufficient "force upon another" to violate the robbery statute. Therefore, because the trial court's charge was more restrictive than a charge this dissent would require and consequently inured to the defendant's benefit, I would reverse the judgment of the Appellate Division and reinstate the guilty verdict.

Justices O'HERN and GARIBALDI join in this opinion.

*For affirmance*—Justices CLIFFORD, HANDLER, POLLOCK and STEIN—4.

*For reversal and reinstatement*—Chief Justice WILENTZ, and Justices O'HERN and GARIBALDI—3.